**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Lee Long, Jr., | No. CV-18-00520-TUC-RM (EJM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Juan Baltazar, | |
| Respondent. | |

Pending before the Court is Petitioner Gary Lee Long, Jr.'s pro se Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondent filed a Return and Answer (Doc. 15), and Petitioner did not file a reply.

As an initial matter, the Court notes that the proper respondent in an action for habeas corpus is the Petitioner's custodian, who, at the time this action was filed, was Juan Baltazar, former warden of United States Penitentiary—Tucson. *See* 28 U.S.C. § 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36 (2004). The Court takes judicial notice that Petitioner is currently incarcerated at USP—Terre Haute, in Indiana.[1] The Court will

---

[1] The undersigned notes that mail sent to Petitioner has been returned to the Court as "undeliverable," and Petitioner has failed to file and serve a notice of address change as required by LRCiv 83.3(d) and this Court's Service Order (Doc. 6). The undersigned used the Bureau of Prisons ("BOP") Inmate Locator to determine that Petitioner is currently incarcerated at USP—Terre Haute.

Pursuant to the Court's Service Order (Doc. 6), failure to comply with the Order, including failure to notify the Court of a change of address, may result in dismissal of the action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with an order of the Court). The undersigned submits that this action is therefore appropriate for dismissal for

substitute the warden of USP—Terre Haute, T.J. Watson, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter was referred to Magistrate Judge Markovich for a Report and Recommendation. For the reasons discussed below, the undersigned Magistrate Judge recommends that the District Court deny and dismiss the Petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently serving a 46-year, 9-month sentence with a projected release date of November 25, 2044.[2] (Doc. 15 Ex. A Attach. 1). Pursuant to the judgment in case No. 1:01CR10021-001, Petitioner was ordered to pay $1345.76 in restitution and a $100.00 assessment. (Doc. 15 Ex. A Attach. 3). The Schedule of Payments states that "[p]ayment of the criminal monetary penalties shall be due in regular quarterly installments of 50% of the deposits in the defendant's inmate trust account while the defendant is in custody." *Id.* In case No. 1:04CR10003-001, Petitioner was ordered to pay $4581.47 in restitution and a $100.00 assessment. (Doc. 15 Ex. A Attach. 4). The Schedule of Payments includes the same language stating that payment "shall be due in regular quarterly installments of 50% of the deposits in the defendant's inmate trust account while the defendant is in custody." *Id.*

Petitioner filed his pro se Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus on October 19, 2018. (Doc. 1). Petitioner alleges two grounds for relief. In Ground One Petitioner asserts that, pursuant to this Court's decision in *Freeman v. Apker*, CV-11-130-TUC-RCC, he is entitled to an order that he be placed on "exempt" status for the BOP

---

failure to prosecute (LRCiv 41.1), failure to notify the Court of address change (LRCiv 83.3), and failure to comply with an Order of the Court.

For the reasons explained below, the undersigned also finds that dismissal is appropriate due to Petitioner's failure to exhaust his administrative remedies and that the Petition should be denied on the merits.

[2] Petitioner was sentenced in two separate cases by the United States District Court for the District of South Dakota, Northern Division. In case No. 1:01CR10021-001 Petitioner was sentenced to 540 months imprisonment for aggravated sexual assault. (Doc. 15 Ex. A Attach. 3). In case No. 1:04CR10003-001 Petitioner was sentenced to a consecutive term of 21 months imprisonment for interstate transportation of a stolen vehicle. (Doc. 15. Ex. A. Attach. 4).

Inmate Financial Responsibility Program ("IFRP"). (Doc. 1 at 4). Petitioner also alleges that his criminal restitution order does not contain a payment schedule and that he was enrolled in the BOP IFRP and obligated to make periodic payments through that program. *Id.* In Ground Two Petitioner alleges that he is entitled to relief on the merits because the initial judgment and restitution order do not provide a payment schedule and the amended order does not mention payment at all. (Doc. 1 at 5). Petitioner further states that he was clearly unable to pay the restitution in full at the time the order was entered. *Id.*

Respondent argues that the Petition should be denied because the Court lacks jurisdiction over Petitioner's claim, because the Petition is moot, because Petitioner failed to exhaust his administrative remedies, and because the Petition is meritless. (Doc. 15).

For the reasons explained below, the undersigned finds that the Petition should be dismissed for lack of exhaustion and should further be denied because Petitioner's claim lacks merit.

**II.    ANALYSIS**

**A.  Jurisdiction**

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Additionally, the judicial power of this and all federal courts is limited to actual cases or controversies. U.S. Const. art. III; *see also Flast v. Cohen*, 392 U.S. 83, 94-95 (1968); *Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th Cir. 1997). "A petition for writ of habeas corpus is moot where a petitioner's claim for relief cannot be redressed by a favorable decision of the court issuing a writ of habeas corpus." *Salazar-Torres v. Benov*, 2014 WL 4960586, *1 (E.D. Cal. Oct.

1, 2014) (citing *Burnett v. Lampert*, 432 F.3d 996, 1000–01 (9th Cir. 2005)); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Therefore, a proper characterization of the petition is necessary to determine jurisdiction.

Here, Petitioner alleges that the restitution order imposed in his criminal case did not contain a payment schedule. Petitioner further alleges that he is entitled to be placed on "exempt" status for the BOP's IFRP. Thus, Petitioner is challenging the BOP's execution of the sentencing order and judgment, i.e., its scheduling of payments through the IFRP. It is well established that a § 2241 petition is the proper vehicle through which a federal prisoner challenges the manner or execution of a sentence. *See Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012) (considering whether the district court impermissibly delegated its authority to the BOP under the MVRA under § 2241); *United States v. Lemoine*, 546 F.3d 1042 (9th Cir. 2008) (considering validity of IFRP requiring restitution payments at a greater rate than specified by the sentencing court under § 2241); *Moore v. Rios*, 555 F. App'x 720 (9th Cir. 2014) ("Because Moore's claim goes to the execution of the restitution order, specifically improper delegation, he properly brought his petition under § 2241, and he did not waive his argument by failing to challenge the restitution order before the sentencing court either on direct appeal or under 28 U.S.C. § 2255."). Thus, to the extent that Respondent argues that the Court lacks jurisdiction over the Petition under § 2241 because any relief the Court could give would not impact the duration of Petitioner's confinement, the undersigned rejects that argument.

Respondent also argues that the Petition is moot because Petitioner has been transferred to a prison where the Ninth Circuit case law he relies on is not controlling. At the time of filing the Petition, Petitioner was incarcerated at USP—Tucson in Arizona, and the Petition challenges the manner in which Petitioner's sentence was being executed in the District of Arizona. At the time the Answer was filed, Petitioner was incarcerated at

USP—Butner, and Petitioner is presently incarcerated at USP—Terre Haute. As Respondent notes, "jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990). However, Respondent argues that mootness here turns on this Court's ability to order effective relief because the Court does not have jurisdiction over Petitioner's current custodian. (Doc. 15 at 9).

In *Rumsfeld*, 542 U.S. 426, the Supreme Court observed that "[d]istrict courts are limited to granting habeas relief 'within their respective jurisdictions.'" *Id.* at 442 (quoting 28 U.S.C. § 2241(a)). The Court further noted that  "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. "The court issuing the writ must have personal jurisdiction over the custodian." *Malone v. Calderon*, 165 F.3d 1234, 1237 (9th Cir. 1999). Thus, "[w]ithout such jurisdiction, the court has no authority to direct the actions of the restraining authority." *Id.* Here, the undersigned finds that the Court presumably lacks personal jurisdiction over Petitioner's current custodian at USP—Terre Haute, which is located in the Southern District of Indiana. *See Singh v. Wolf*, 2020 WL 4455468, at *3 (D. Ariz. Mar. 31, 2020 ("the district court's habeas jurisdiction is limited to the district's territory, such jurisdiction is determined by personal jurisdiction over the respondent within such territory (without benefit of long-arm service), and the proper respondent is normally the local warden where the petitioner is detained"), *report and recommendation adopted*, 2020 WL 2611208 (D. Ariz. May 22, 2020); *Divine v. Chavez*, 2009 WL 3722994, at *6 (D. Ariz. Nov. 4, 2009) (conducting personal jurisdiction analysis and determining that court lacked personal jurisdiction over Oregon respondent in § 2241 action).

While the Court could transfer this action to any other such court in which the action could have been brought, the undersigned finds that it is not in the interests of justice to transfer this matter. *See Miller v. Hambrick*, 905 F.2d 259 (9th Cir. 1990) (holding that §

2241 petition was not moot where jurisdiction existed when petition was filed and applying 28 U.S.C. § 1631 to *sua sponte* order the district court to transfer the petition).[3] An inmate may be transferred to a different institution at any time, and the undersigned is mindful of avoiding a "ping-pong" effect where the § 2241 petition is transferred to a new court each time the petitioner is designated to a new institution. Moreover, as explained below, regardless of whether this action may be considered moot in this Court, the undersigned recommends that the Petition be dismissed for lack of exhaustion and further be denied on the merits.

### B. Exhaustion

#### i. In General

As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241. *Ward*, 678 F.3d at 1045. "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55 (1995). "Nevertheless, '[p]rudential limits, like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alteration in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

> Courts may require prudential exhaustion if "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review."

---

[3] Further, transfer to the Southern District of Indiana would not be appropriate because that court lacked jurisdiction at the time the Petition was filed. *See Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) ("Transfer is appropriate under § 1631 if three conditions are met: (1) the transferring court lacks jurisdiction; (2) the transferee court could have exercised jurisdiction at the time the action was filed; and (3) the transfer is in the interest of justice.").

*Id*. (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Courts have discretion to waive the exhaustion requirement where "'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)); *see also Acevedo–Carranza v. Ashcroft*, 371 F.3d 539, 542 n.3 (9th Cir. 2004). A "key consideration" in exercising such discretion is "whether 'relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]'" *Laing*, 370 F.3d at 1000 (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

ii.   BOP Administrative Procedures

The BOP has established an Administrative Remedy Program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Before filing a formal administrative grievance, an inmate is to "first present an issue of concern informally to staff, and staff shall attempt to informally resolve

the issue  . . . ." 28 C.F.R. § 542.13. A request for informal resolution is submitted using a BP–8 form. *See Nunez v. Duncan*, 591 F.3d 1217, 1219 (9th Cir. 2010).

The formal grievance system under the Administrative Remedy Program consists of three levels of review:

In the first level of review, an inmate files a formal Administrative Remedy Request written on a BP–9 form. The BP–9 form must be submitted to the Warden within 20 calendar days following the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a); *see also Nunez*, 591 F.3d at 1219 ("The BP–8 and BP–9 are linked. Both forms involve a complaint arising out of the same incident, and both forms must be submitted within 20 calendar days of the date of that incident.").

Second, if an inmate is dissatisfied with the Warden's response, the inmate may submit an appeal on a BP–10 form to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response to the inmate's Administrative Remedy Request. 28 C.F.R. § 542.15(a).

Third, "an inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).

The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond with 40 days. *Id*. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id*.

      iii. Exhaustion in the Instant Case

Here, Petitioner admits that he did not exhaust his administrative remedies for any of the grounds in his Petition, and states that exhaustion should be excused based on

precedent and futility. (Doc. 1-1 at 3). Respondent contends that the Petition should be denied based on Petitioner's failure to exhaust his administrative remedies. Respondent notes that, unlike the cases Petitioner relies on to support his claim of futility, here Petitioner never even initiated the administrative remedy process. (Doc. 15 at 11). Thus, Respondent contends that Petitioner cannot credibly allege that his request would be denied based on official BOP policy because Petitioner never filed an administrative remedy request and thus never received a formal denial. Indeed, the record reflects that while Petitioner has filed a number of administrative remedy requests, none are related to his restitution order or the IFRP. (Doc. 15 Ex. A Attach. 8).

Respondent also states that, as of April 4, 2013, a written notice was to be posted in all BOP housing units located in the Ninth Circuit to inform inmates about the Ninth Circuit's decision in *Ward*, 678 F.3d 1042. (Doc. 15 at 12). The notice informs inmates that they may request review of a "due immediately" MVRA restitution order either during the inmate's program review meeting or through the administrative remedy program. The notice reads as follows:

> NOTICE TO ALL INMATES CURRENTLY HOUSED IN BOP FACILITIES IN THE NINTH CIRCUIT
>
> Pursuant to the Ninth Circuit decision of Ward v. Chavez, 678 F.3d 1042 (9th Cir. 2012), Bureau of Prisons (BOP) inmates currently confined in the Ninth Circuit may request review of Restitution Orders that are "due immediately" **and** which have no court-ordered payment schedule. Upon request, review of such restitution orders may take place during the inmate's next scheduled Program Review, or review may occur upon request through the Administrative Remedy Process. If the Unit Team finds that the inmate's restitution order is 1) dated on or after April 24, 1996, 2) is "due immediately" and 3) lacks a court-ordered payment schedule that can be applied during imprisonment, the Unit Team will no longer include the restitution order when determining the financial obligations subject to collection under the Inmate Financial Responsibility Program.

(Doc. 15 Ex. A Attach. 9).

In *Ward*, the Ninth Circuit considered the relationship between a federal criminal judgment ordering restitution and the BOP's collection of such penalties pursuant to the

IFRP. The court found that "[f]or a restitution order to be lawful . . . [18 U.S.C.] § 3664 requires that the district court set a schedule in consideration of the defendant's financial resources." *Ward*, 678 F.3d at 1050. Where a "district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule 'in consideration of' the financial circumstances of the defendant." *Id*. As such, the BOP "lacks the authority to collect restitution payments" through the IFRP where the sentencing court did not set forth a proper payment schedule in the restitution order. *Id*. at 1051.

As a result of the decision in *Ward*, and as evidenced by the copy of the BOP Notice that Respondent provides, the BOP has developed a protocol to address administrative remedy requests regarding restitution orders and an inmate's IFRP participation. The undersigned finds that the use of the administrative remedy process in this case would have allowed the BOP to investigate Petitioner's claims, and, if warranted, correct the alleged errors. While Petitioner contends that exhaustion would be futile, Petitioner has not filed any administrative requests for relief with the BOP, and thus he has not given any of the BOP's formal administrative levels of review an opportunity to consider his claim. *See Quinonez v. McGrew*, 2016 WL 1728980, at *1 (9th Cir. Apr. 29, 2016) (affirming district court's dismissal of § 2241 petition for failure to exhaust administrative remedies where petitioner "did not complete any level of the BOP's Administrative Remedy Program and there is no indication that his pursuit of those remedies would be futile."). Furthermore, the BOP's expertise is necessary to generate a proper factual record at the administrative level. *See Puga*, 488 F.3d at 815. As the Ninth Circuit Court of Appeals has recognized:

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). Accordingly, the undersigned finds

that Petitioner has failed to exhaust his administrative remedies in this matter, and that exhaustion should not be waived. *See, e.g., Adkins v. Sanders*, 2013 WL 1090295 (C.D. Cal. Feb. 6, 2013); *Cornwell v. Sanders*, 2013 WL 692999 (C.D. Cal. Jan. 7, 2013). In light of Petitioner's failure to exhaust his administrative remedies, the undersigned therefore recommends that the Petition should be dismissed.

### C. Merits

#### i.  Inmate Financial Responsibility Program

An inmate's criminal monetary penalties are addressed by specific statutory authority. The imposition of fines is governed generally by 18 U.S.C. § 3572(d). Section 3572(d) governs the time and method of payment, stating in relevant part:

> A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule.

Section 3013(b) states that special assessments "shall be collected in the manner that fines are collected[.]" Additionally, § 3664 delineates procedures for issuance and enforcement of orders of restitution.

In *Ward*, the Ninth Circuit held that "the district court's statutory responsibility to set the restitution payment schedule is 'non-delegable.'" 678 F.3d at 1046 (citing *United States v. Gunning* (*Gunning I*), 339 F.3d 948, 949 (9th Cir. 2003) and *United States v. Gunning* (*Gunning II*), 401 F.3d 1145, 1149 (9th Cir. 2005)). Where the sentencing court determines that a "defendant's financial resources are sufficient such that periodic payments are unwarranted, there is no other entity the court delegates its responsibility to in ordering that restitution should be paid immediately, and that restitution order is not unlawful." *Id.* at 1049–1050. "But where the defendant has insufficient financial resources to make immediate repayment, the district court—not BOP, not Probation—must set a repayment schedule in the judgment of conviction in order to discharge its responsibilities under the MVRA." *Id.* at 1050. The scheduling of payment of fines, however, may be

delegated to the BOP. *Gunning II*, 401 F.3d at 1150.

The BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations" through the IFRP. 28 C.F.R. § 545.10. "As part of the initial classification process, [BOP] staff will assist the inmate in developing a financial plan for meeting those obligations." *Id.* The financial plan is designed to meet the inmate's financial obligations in the following order of priority: (1) special assessment; (2) court-ordered restitution; (3) fines and court costs; (4) state or local court obligations; and (5) other federal government obligations. 28 C.F.R. § 545.11(a). Payments for the aforementioned obligations may be made from institution resources, such as prison work assignments, or from community resources. 28 C.F.R. § 545.11(b).

Through the IFRP, the BOP encourages inmates with financial obligations to participate in the voluntary program, but does not force inmates to participate. *Lemoine*, 546 F.3d at 1047; *see also* 28 C.F.R. § 545.10. The Ninth Circuit Court of Appeals has squarely addressed an inmate claim that the IFRP was "involuntary and that he only assented to the terms of his financial plan 'to avoid the adverse consequences of not agreeing.'" *Lemoine*, 546 F.3d at 1049. The court held that the IFRP "does not implicate [an inmate's] constitutional rights[,]" because an inmate "ha[s] no entitlement, constitutional or otherwise, to any of the benefits agreeing to participate in the IFRP would provide, such as work detail outside the prison perimeter, a higher commissary spending limit, a release gratuity, or pay beyond the maintenance pay level." *Id.* Accordingly, "[t]he BOP . . . ha[s] the authority to create a financial plan . . . through the IFRP and to impose penalties if [an inmate] fail[s] to accept its terms." *Id.*

ii.  Petitioner's Restitution is Being Lawfully Collected

Here, both of Petitioner's written judgments ordered that "[p]ayment of the criminal monetary penalties shall be due in regular quarterly installments of 50% of the deposits in the defendant's inmate trust account while the defendant is in custody." (Doc. 15 Ex. A Attach. 3 at 6, Attach. 4 at 6). As such, the sentencing court met its obligations under *Ward* by setting the restitution repayment schedule. *See Ward*, 678 F.3d at 1046. Petitioner's case

is thus distinguishable from this Court's decisions in *Freeman v. Apker*, 2011 WL 6412566 (D. Ariz. Dec. 21, 2011) and *Starr v. Apker*, 2014 WL 847366 (D. Ariz. Mar. 5, 2014), where the Court found that sentencing orders stating restitution was "due and payable immediately" impermissibly delegated a non-delegable duty to the BOP to determine a restitution payment schedule. Moreover, the repayment schedule set by the BOP for Petitioner to gain the benefits associated with IFRP compliance was $25.00 per quarter.[4] (Doc. 15 at 5; Ex. A Attach. 6); *see also Lemoine*, 546 F.3d at 1050 (holding that "where the district court has properly set a restitution repayment schedule . . . the BOP has the authority to encourage voluntary payments in excess of those required under the court's judgment by conditioning the receipt of certain privileges during the term of imprisonment on the inmate's participation in the IFRP.").

To the extent that Petitioner argues that the Court should excuse payments on his restitution obligation while he is incarcerated and recalculate the restitution amount upon his release from custody, the Court previously rejected similar arguments in *Starr*, 2014 WL 847366. There, the Court noted that petitions pursuant to 28 U.S.C. § 2241 are only appropriate to challenge the manner, location, or conditions of a sentence's execution, and that the Court therefore lacks jurisdiction to consider claims regarding modifications as to the amount and terms of the restitution order entered by the sentencing court. *Id.* at *2.

In sum, the undersigned finds that Petitioner's restitution order complies with *Ward* and that the sentencing court did not impermissibly delegate its authority to the BOP to establish a repayment schedule. Petitioner voluntarily enrolled in the IFRP and is free to stop participating in the program at any time. Petitioner "did not have a preexisting right to receive any of the benefits conditioned on his participation" in the IFRP, nor does he have any constitutional rights to those privileges. *Lemoine*, 546 F.3d at 1046–49. Moreover, the BOP is within its authority to offer the IFRP, and Petitioner's voluntarily participation allows the BOP to collect and allocate Petitioner's funds to his special

---

[4] Respondent notes that, at the time of filing the Answer, Petitioner had last made payments on March 13, 2018 and September 11, 2018 and that Petitioner was waiting on a new financial plan to address his outstanding restitution balances. (Doc. 15 at 5; Ex. A Attachs. 6 and 7).

assessments and restitution. Accordingly, the undersigned finds that Petitioner's claims are without merit and that the Petition should be denied.

**III.   RECOMMENDATION**

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order:

(1)   **SUBSTITUTING** T.J. Watson, Warden, as Respondent for Juan Baltazar pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2)   **DENYING** and **DISMISSING** Petitioner's Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus. (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-18-520-TUC-RM**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties. To ensure that Petitioner receives a copy of this Report and Recommendation, the Clerk's Office shall mail Petitioner a copy of the Report and Recommendation at his current address:

USP Terre Haute

U.S. Penitentiary

P.O. Box 33

Terre Haute, IN  47808

Dated this 16th day of September, 2020.

Eric J. Markovich
United States Magistrate Judge

- 14 -